RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KNALL BEVERAGE, INC.,
HDT EXPEDITIONARY SYSTEMS, INC., fka
Hunter Manufacturing Company, and
BEVERAGE DISTRIBUTORS, INC.,
                    _Plaintiffs-Appellants_,

    _v._

TEAMSTERS LOCAL UNION NO. 293 PENSION
PLAN, et al.,
                    _Defendants-Appellees_.

No. 13-3698

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cv-03125—Dan A. Polster, District Judge.

Argued: January 29, 2014

Decided and Filed: March 4, 2014

Before: GUY, GIBBONS, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Ronald L. Kahn, ULMER & BERNE LLP, Cleveland, Ohio, for Appellants.
David W. Alexander, SQUIRE SANDERS LLP, Columbus, Ohio, for Appellee Lipton.
John R. Doll, DOLL, JANSEN, FORD & RAKAY, Dayton, Ohio, for Teamsters and
Distillata Appellees. Azeez Hayne, MORGAN, LEWIS, BOCKIUS LLP, Philadelphia,
Pennsylvania, for Appellee American Bottling. Dan L. Makee, MCDONALD
HOPKINS LLC, Cleveland, Ohio, for Trustee Appellees. Shaylor R. Steele, BENESCH,
FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellee
DiGeronimo. **ON BRIEF:** Ronald L. Kahn, Brad A. Sobolewski, ULMER & BERNE
LLP, Cleveland, Ohio, John J. McGowan, Jr., Stephen C. Sutton, BAKER &
HOSTETLER LLP, Cleveland, Ohio, Adam R. Hanley, Jeffrey N. Lindemann, FROST
BROWN TODD LLC, Columbus, Ohio, for Appellants. David W. Alexander, SQUIRE
SANDERS LLP, Columbus, Ohio, Jeffrey J. Wedel, Ryan A. Sobel, SQUIRE
SANDERS LLP, Cleveland, Ohio, for Appellee Lipton. John R. Doll, DOLL, JANSEN,
FORD & RAKAY, Dayton, Ohio, for Teamsters and Distillata Appellees. Azeez Hayne,
Brandon J. Brigham, MORGAN, LEWIS, BOCKIUS LLP, Philadelphia, Pennsylvania,

Christopher A. Weals, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee American Bottling. Dan L. Makee, William J. O'Neill, MCDONALD HOPKINS LLC, Cleveland, Ohio, for Trustee Appellees. Shaylor R. Steele, Thomas O. Crist, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellee DiGeronimo. James D. Kurek, FISCHER & PHILLIPS LLP, Cleveland, Ohio, for Appellee American Metal. Scott Michael Hare, Pittsburgh, Pennsylvania, Robert D. Anderle, SEELY, SAVIDGE, EBERT & GOURASH CO., LPA, Cleveland, Ohio, for Appellee Cleveland Coca-Cola Bottling.

————————

**OPINION**

————————

ROGERS, Circuit Judge. The plaintiffs—three employers that were formerly contributing members of the Teamsters Local Union No. 293 Pension Plan—appeal the district court's dismissal of their suit under the Multiemployer Pension Plan Amendments Act. In withdrawing from the plan, the employers were required to pay, and have paid, "withdrawal liability." If the plan is terminated altogether by a "mass withdrawal" of the remaining members within three years, the earlier withdrawing members may be subject to additional "reallocation liability." Under the Act, disputes about the amount of such reallocation liability are subject to mandatory arbitration. Plaintiffs claim that the mass withdrawal in this case—expedited as it was to occur within the three-year period in order that plaintiffs would be subject to reallocation liability—was invalid. Notwithstanding various arguments by plaintiffs, the district court correctly ruled that the Act requires that this claim be arbitrated, and properly dismissed the case without prejudice.

Before Congress enacted the Multiemployer Pension Plan Amendments Act ("the Act"), 29 U.S.C. §§ 1381–1461, employers had an incentive to withdraw from a pension plan experiencing financial hardship. *See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 608 (1993). Congress sought to eliminate this incentive by making a contributor that chose to withdraw from a plan liable for its share of the plan's liabilities. *Id.* When a contributor withdraws from a plan, that contributor must pay its share of the unfunded, vested benefits as calculated at the time of

withdrawal from the plan. In the case of a mass withdrawal (i.e., when all of the employers withdraw or stop contributing to the plan, 29 U.S.C. § 1341a), the Act sometimes requires an employer that withdrew from the plan before the date of the mass withdrawal to pay additional reallocation liability.

In 2007 and 2008, each plaintiff independently reached an agreement with the plan to terminate its individual membership. This meant that each plaintiff was subject to—and the trustees assessed—withdrawal liability in an amount that reflected that plaintiff's share of unfunded, vested pension benefits pursuant to the Act. No party disputes this liability, and the plaintiffs have either paid or are in the process of paying those obligations. Rather, the plaintiffs challenge the trustees' determination that the plaintiffs owe reallocation liability following an alleged mass withdrawal by the rest of the contributors to the plan. In 2009, the trustees determined that the fund terminated by the mass withdrawal of the remaining employers. According to the plaintiffs, the withdrawing employers achieved this mass withdrawal by reopening their collective bargaining agreements and inserting "zipper clauses" into the agreements. These clauses gave the employers the right to withdraw from the plan if all of the other contributors withdrew. Then the employers simultaneously exercised their rights under the zipper clauses, thereby causing the plan to terminate via mass withdrawal. Since the plaintiffs had terminated their membership in the plan within three years of its eventual termination, the trustees could assess reallocation liability against the plaintiffs. 29 U.S.C. § 1399(c)(1)(D). The trustees concluded that the plaintiffs together owed over $12 million in additional reallocation liability. Plaintiffs challenge this assessment of reallocation liability.

As required by the Act, each plaintiff initiated an arbitration to dispute the amount of reallocation liability assessed by the trustees. The plaintiffs subsequently filed this civil action and claimed that the mass withdrawal itself was a sham. In light of the civil action, the arbitration proceedings were put on hold. Various defendants filed motions to dismiss and argued that the plaintiffs first had to complete arbitration pursuant to 29 U.S.C. § 1401 before bringing their dispute in federal court. The district

court agreed and dismissed the plaintiffs' complaint without prejudice. The plaintiffs appeal.

Although the plaintiffs' complaint requests that defendants continue contributing to the plan and asks for a court to make certain declarations in support of its theories, the only remedies sought in favor of the plaintiffs are relief from the obligation to make reallocation liability payments, return of payments already made, termination of the pending arbitration, and attorney fees and costs. *See* Compl. at 48–49. The determination of whether plaintiffs are subject to reallocation liability is however straightforwardly subject to mandatory arbitration by the Act.

The plaintiffs cannot bring this action in federal court because they have not complied with the Act's arbitration requirement, 29 U.S.C. § 1401(a)(1), which states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Sections 1381 through 1399 deal with the imposition and calculation of liability for withdrawing from a plan, and specifically address the redetermination required in the case of a withdrawal during a period three years before a mass withdrawal. 29 U.S.C. § 1399(c)(1)(D). These provisions also contain the statutory language relied upon by plaintiffs:

> If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.

29 U.S.C. § 1392(c). This provision, and the general provision that includes employers as persons entitled to maintain a civil action under the provisions of ERISA regarding withdrawal from multi-employer plans, 29 U.S.C. § 1451(a)(1), are conceded by plaintiffs to be the "two statutes [that] form the basis of the Plaintiff-Appellants' Civil Action against of the Defendant-Appellees." Knall Br. at 12.

The plaintiffs argue that arbitration is not required because there was no plan termination under § 1341a(a)(2) (a section not within §§ 1381–1399), which states that a termination of a plan occurs as a result of "the withdrawal of every employer from the

plan, within the meaning of [§1383]." In other words, arbitration is not required because the validity of the mass withdrawal is not a determination made under §§1381–1399, even though §1341a (not subject to mandatory arbitration) refers to and depends on language in §§1381–1399 to determine when a termination is not valid. Indeed, plaintiffs rely squarely on language from §§1381–1399 (i.e., § 1392(c)) to claim that the termination is not valid, thus indirectly conceding the necessity of resolving an issue subject to arbitration in order to adjudicate their claim.

The circularity of the argument should be obvious. It is impossible to conclude that the plan did not terminate under § 1341a without first making determinations under § 1392(c). According to the plaintiffs, the defendants shifted liability onto the plaintiffs by amending their collective bargaining agreements, thereby initiating the mass withdrawal and causing the plaintiffs to incur reallocation liability. Since the defendants would otherwise have been responsible for this liability, the purpose of amending the collective bargaining agreements was evading or avoiding liability. Thus the amendments to the collective bargaining agreements that made the mass withdrawal possible are impermissible "evade or avoid" transactions and must be set aside under § 1392(c). And if those transactions are treated as never having happened pursuant to § 1392(c), then the defendant-employers never withdrew from the plan and a mass withdrawal never occurred under § 1341a. Thus the plaintiffs' claim under § 1341a is inextricably intertwined with a determination under § 1392. Without making a finding under § 1392, a decisionmaker could not conclude that the mass withdrawal never occurred under § 1341a. And disputes about § 1392 determinations are subject to mandatory arbitration. 29 U.S.C. § 1401(a)(1).

Rejecting plaintiffs' strained argument is fully consistent with Congress's apparent desire to subject disputes regarding trustees' assessment of withdrawal and reallocation liability to mandatory arbitration. *See, e.g.*, *Mason & Dixon Tank Lines, Inc. v. Cent. States, S.E. & S.W. Areas Pension Fund*, 852 F.2d 156, 164 (6th Cir. 1988); *Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech. Inc.*, 909 F.2d 1379, 1385–86 (10th Cir. 1990); *Teamsters Pension Trust Fund-Bd. of Trustees of W.*

*Conference v. Allyn Transp. Co.*, 832 F.2d 502, 506 (9th Cir. 1987).  At the end of the day, this dispute is about whether the plaintiffs owe reallocation liability, and arbitration is required in such cases.

Plaintiffs' arguments to the contrary are unconvincing.  The plaintiffs argue that the trustees made a "determination" under Plaintiffs § 1341a that there was a mass withdrawal, without addressing whether § 1392(c) precluded such a determination, so that there was no § 1392(c) "determination" subject to § 1401.  The argument is but a different way of couching the argument rejected above.

Plaintiffs argue that an arbitration under § 1401 can only involve the plaintiff-employer and the trustees, and that their theory of the case hinges on the conduct of other parties (i.e. the union and the withdrawing employers).  But the plaintiffs never explain why the conduct of other parties cannot be considered during an arbitration to determine the plaintiffs' reallocation liability.  There is no reason why, in reviewing the trustees' assessment of liability, the arbitrator cannot determine that the CBA transactions were shams, that no mass withdrawal ever occurred, and that the plaintiffs thus owe no reallocation liability.

There is no basis for finding an exception in this case to the usual statutory mandate for arbitration under the Act.  To be sure, this court has recognized three circumstances in which the parties may skip arbitration and proceed directly to federal court: (1) when an employer makes a facial constitutional attack; (2) when an employer has a verifiable claim that arbitration would lead to irreparable injury; and (3) when the determination involves whether a company is an employer under the Act.  *Findlay Truck Line, Inc. v. Cent. States, S.E. & S.W. Areas Pension Fund*, 726 F.3d 738, 755 (6th Cir. 2013).  Those exceptions encompass cases where arbitrating would not promote judicial economy, or where pure constitutional or statutory interpretation is involved.  *Id.*; *Cent. States, S.E. & S.W. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987). The plaintiffs candidly ask this court to create a fourth exception for determining whether a plan terminated via mass withdrawal.  But deciding that an ostensible mass withdrawal was intended to "evade or avoid liability" is precisely the type of issue

appropriate for arbitration. Nor does the logic underlying the employer-status exception extend to a determination that a plan terminated via mass withdrawal. The employer-status exception exists because only disputes "between an employer and the plan sponsor" are subject to mandatory arbitration. 29 U.S.C. § 1401(a)(1). Whether a party is an employer is a threshold question that must be answered in order to determine whether that company has a duty to arbitrate in the first place. *Mason & Dixon*, 852 F.2d at 167. By contrast, the § 1401 duty to arbitrate in no way turns on whether or not the plan terminated via mass withdrawal.

We do not address plaintiffs' due process arguments, which were not fully presented to the district court. Generally, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). While the plaintiffs did include a passing reference in their brief below to a Supreme Court case involving due process, they never clearly argued that submitting their dispute to arbitration would amount to a denial of due process. "[V]ague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal." *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996). In any event, due process challenges to the conduct of the arbitration can be raised in the judicial review of the arbitrations permitted by 29 U.S.C. § 1401(b)(2).

We need not address the various alternative grounds for affirmance asserted by defendants. The judgment of the district court is affirmed.