RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DiGeronimo Aggregates, LLC,

　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

Michael H. Zemla; Steven M. Eisenberg; Jack
W. Sideris; Nick C. Sideris; Kevin Schroeder;
James G. Stiegel; Thomas Tyrrell,

　　　　　　　　　　　　*Defendants-Appellees.*

No. 13-4389

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-01208—Dan A. Polster, District Judge.

Argued: June 25, 2014

Decided and Filed: August 14, 2014

Before: GRIFFIN and DONALD, Circuit Judges; and GRAHAM, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Shaylor R. Steele, BENESCH FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant. Heather M. Kern, MCDONALD HOPKINS LLC, Cleveland, Ohio, for Appellees. **ON BRIEF:** Shaylor R. Steele, Thomas O. Crist, Patrick J. Egan, BENESCH FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant. Heather M. Kern, Dan L. Makee, MCDONALD HOPKINS LLC, Cleveland, Ohio, for Appellees.

_____

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.    Plaintiff, an employer who contributes to a multiemployer pension plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, filed a complaint against defendants, trustees of that plan, alleging that they negligently managed the plan, causing plaintiff to suffer an increased withdrawal liability when a majority of contributing employers withdrew from the plan.    The district court granted defendants' Rule 12(b)(6) motion to dismiss, holding that there was no substantive basis for plaintiff's negligence claim in any section of ERISA or under the federal common law.    We agree and affirm.

I.

Plaintiff DiGeronimo Aggregates, LLC, and a number of other employers, contributed to the Teamsters Local Union No. 293 Pension Plan ("Plan").[1]    Defendants Michael H. Zemla, Jack W. Sideris, Nick C. Sideris, Thomas Tyrrell, Steven M. Eisenberg, Kevin Schroeder, and James G. Stiegel, are trustees of the Plan.    Defendants managed the Plan, including negotiating and ratifying contribution rates and overseeing the Plan's investments and expenses.

Defendants terminated the Plan in December 2009 because substantially all of the Plan's contributing employers withdrew from paying contributions.    Consequently, defendants assessed $1,755,733 in "withdrawal liability" to plaintiff, which represents plaintiff's share of the $49,000,000 in unfunded, vested benefits that the contributing employers owed the Plan.

In May 2013, plaintiff sued defendants under 29 U.S.C. § 1451(a), alleging that defendants negligently managed the Plan's assets, causing plaintiff harm in the form of an increased withdrawal liability.[2]    Defendants filed a motion to dismiss under Rule 12(b)(6),

_____

[1]The Plan is an "employee pension benefit plan" under 29 U.S.C. § 1002(2) and a "multiemployer plan" under 29 U.S.C. § 1002(37) and 29 U.S.C. § 1301(a)(3).

[2]This case began as a cross-claim in another proceeding.  In *Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pension Plan*, No. 1:12 CV 3125, 2013 WL 1891357 (N.D. Ohio May 6, 2013), three employers who

arguing that plaintiff failed to state a viable claim for relief because § 1451(a) confers no substantive rights.  Plaintiff responded by recognizing that § 1451(a) is a standing provision only, and agreeing that the section does not—by itself—provide a legal basis for a negligence cause of action.  However, plaintiff urged the district court to exercise its limited law-making authority under the federal common law of ERISA pension plans and recognize a new legal basis for its negligence claim.  The court declined plaintiff's invitation and granted defendants' motion.  Plaintiff timely appealed.

## II.

"We review de novo a district court's order to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6).  In doing so, we accept all well-pled allegations as true and determine whether they plausibly state a claim for relief."  *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013).  To survive a Rule 12(b)(6) motion to dismiss, "[t]he complaint must [ ] contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation marks and citation omitted).

## III.

The parties dispute whether plaintiff has a cause of action under the federal common law of ERISA pension plans against defendants for harm caused by defendants' alleged negligent plan management.  We hold that plaintiff has no cause of action.

A brief review of the statutory scheme governing multiemployer pension plans provides context.  Congress enacted ERISA to ensure that "if a worker has been promised a defined

---

withdrew from the Plan before its December 2009 termination sued the Plan's trustees and other contributing employers, including plaintiff, challenging the "mass withdrawal" and subsequent termination. *Id.* at *1.  In that action, plaintiff filed a cross-claim against the Plan's trustees based on the same negligence theory that it presents in this case. *Id.* at *2 n.3.  The district court dismissed the action without prejudice in favor of mandatory arbitration under 29 U.S.C. § 1401(a)(1). *Id.* at *2.  Before an appeal of that decision was taken, the court entered an order clarifying that the negligence cross-claim would not be arbitrated because it was "wholly unrelated" to the underlying suit and that plaintiff was "not barred from reasserting its cross-claim in a separate lawsuit."  Plaintiff subsequently filed the case at bar.  One day after plaintiff filed its reply brief in this proceeding, this court affirmed the district court's decision in *Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pension Plan*, 744 F.3d 419 (6th Cir. 2014).

pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 375 (1980). ERISA also created the Pension Benefit Guaranty Corporation ("PBGC") to administer a newly-formed pension plan termination insurance program. 29 U.S.C. § 1302. Under that program, PBGC would collect insurance premiums from covered pension plans and provide benefits to participants in those plans if their plans terminate with insufficient assets to support the guaranteed benefits. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984).

However, it soon became apparent that the PBGC would be overwhelmed by obligations in excess of its capacity because a significant number of multiemployer plans were experiencing extreme financial hardship. *Id.* at 721. In response, Congress directed the PBGC to prepare a report analyzing the issue and recommending appropriate legislative action. *Id.* at 721–22. The PBGC found, among other things, that ERISA failed to address the adverse consequences that occurred when an employer withdrew from a multiemployer pension plan:

> A key problem of ongoing multiemployer plans, especially in declining industries, is the problem of employer withdrawal. Employer withdrawals reduce a plan's contribution base. This pushes the contribution rate for remaining employers to higher and higher levels . . . . The rising costs may encourage—or force—further withdrawals, thereby increasing the inherited liabilities to be funded by an ever-decreasing contribution base. This vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue.

*Id.* at 722 n.2 (internal quotation marks and citation omitted). Consequently, the PBGC proposed rules under which a withdrawing employer would be required "to pay whatever share of the plan's unfunded vested liabilities was attributable to that employer's participation." *Id.* at 723. Based upon the PBGC's recommendations, Congress enacted the Multiemployer Pension Plan Amendment Act ("MPPAA"). *See* 29 U.S.C. §§ 1381–1461.

Relevant here, the MPPAA provides that if an employer withdraws from a multiemployer fund, it must make a payment of "withdrawal liability," which is calculated as the employer's proportionate share of the fund's "unfunded vested benefits[.]" 29 U.S.C. § 1381(b)(1). The MPPAA provides that once a fund determines that an employer has withdrawn from its plan, the

fund must notify the employer of the amount of the liability, prepare a schedule for liability payments, and demand payment in accordance with the schedule. *Id.* §§ 1382, 1399(b)(1).

In this case, because nearly all of the contributing employers voted to withdraw and terminate the Plan, defendants assessed plaintiff with $1,755,733 in "withdrawal liability." Plaintiff does not challenge an assessment of liability or defendants' mathematical calculation. Rather, plaintiff contends that defendants negligently managed the Plan, primarily by ratifying contribution rates that were insufficient to support the benefits owed by the Plan, and in doing so, directly caused a large portion of the $1,755,733 withdrawal liability. Plaintiff relies upon the federal common law of ERISA pension plans for creating a negligence cause of action against the Plan's trustees and argues 29 U.S.C. § 1451(a)(1) provides it with standing to assert such a claim in federal district court. We address each point, beginning with statutory standing.

The parties apparently agree that plaintiff has statutory standing. *See Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011) (distinct from Article III standing, statutory standing asks "whether *this* plaintiff has a cause of action under [a particular] statute" (citation omitted)). Section 1451(a)(1) provides that an "employer . . . who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan . . . may bring an action for appropriate legal or equitable relief, or both." The statute is satisfied here because plaintiff is an employer who has been adversely affected by the action of defendants, who are trustees of a multiemployer plan. The parties also agree that § 1451(a)(1) confers no substantive rights but simply identifies who can pursue a civil action to enforce the sections governing multiemployer plans. *See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 203 (1997) (noting that § 1451(a)(1) addresses only "*who* may sue for a violation of the obligations established by the Act's substantive provisions"). The parties' agreements end here as they dispute the legal viability of plaintiff's negligence claim.

Acknowledging that such a negligence claim is not authorized by any section of ERISA, plaintiff urges us to utilize our lawmaking powers under the federal common law to create a new negligence claim in favor of contributing employers. At the time of ERISA's enactment, Congress in general encouraged the courts to develop a federal common law of employee benefits because many issues relating to employee benefits would arise where there would be no

specific rule to govern the question. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 n.26 (1983). However, the Supreme Court has recognized that the creation of federal common law is a "necessary expedient" under these conditions and an "unusual exercise of lawmaking[,]" which should only be indulged "in a few and restricted instances." *Milwaukee v. Illinois*, 451 U.S. 304, 313–14 (1981) (internal quotation marks and citation omitted). Furthermore, where Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, courts do not lightly create additional rights under the rubric of federal common law. *See, e.g., Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285 (1952) (declining to fashion a rule of contribution among joint tortfeasors in the heavily regulated area of maritime personal injuries).

Previously, we have held that our authority to create federal common law in this area is restricted to instances in which (1) ERISA is silent or ambiguous; (2) there is an awkward gap in the statutory scheme; or (3) federal common law is essential to the promotion of fundamental ERISA policies. *Local 6-0682 Int'l Union of Paper, Allied Indus., Chem. & Energy Workers v. Nat'l Indus. Grp. Pension Plan*, 342 F.3d 606, 609 (6th Cir. 2003). Under these limitations, we have concluded that the federal common law of ERISA pension plans provides for restitution claims, *see Whitworth Bros. Storage Co. v. Cent. States, Se. and Sw. Areas Pension Fund*, 794 F.2d 221, 233–36 (6th Cir. 1986) (holding that a contributing employer to a multiemployer pension fund could maintain a federal common law contract claim for restitution against the fund where the employer alleged that it had mistakenly made contributions to the fund on behalf of two employees who were not eligible to participate in the fund), certain estoppel claims, *see Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010) (recognizing that a federal common law equitable estoppel claim can be brought against a pension plan based upon participants' reliance on a retirement benefit statement); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403–04 (6th Cir. 1998) (en banc) (a promissory estoppel claim may be brought against the sponsor of an early retiree medical plan based upon a promise to provide coverage for life), and undue influence claims, *see Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704–05 (6th Cir. 2000) (ruling that it was necessary to adopt a federal common law standard, drawn from principles of state law, to deal with the proper beneficiary of life insurance proceeds where undue influence was the issue).

In this case, plaintiff insists that its proposed negligence claim satisfies all three conditions set forth in *Local 6-0682*. We disagree. First, ERISA is not silent on who holds a claim against trustees for negligent management of plan assets: participants and beneficiaries do. By omission, employers do not. *See* 29 U.S.C. § 1104(a); *see also Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 590–91 (6th Cir. 2012), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, ___ U.S. ___, No. 12-751, 2014 WL 2864481 (U.S. June 25, 2014); *Local 6-0682*, 342 F.3d at 609 n.1. We are reluctant to tamper with an enforcement scheme crafted with such care because Congress has expressly defined who may challenge a trustee's plan management decisions and a contributing employer is not included in that definition, even after the enactment of the MPPAA which created the possibility of large withdrawal liability. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). Had Congress intended to create a negligence cause of action in favor of contributing employers against trustees, it certainly knew how to do so. Because such a remedy is not expressly available, and because ERISA and the MPPAA create a comprehensive legislative scheme governing contributing employers and multiemployer plans—including an integrated system of procedures for enforcement regarding withdrawal liability—a strong presumption exists that Congress deliberately omitted the availability of such a remedy. *See Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 97 (1981). Therefore, ERISA is not "silent or ambiguous" on who may sue trustees for plan mismanagement.

Second, our recognition of a new negligence cause of action will not close an "awkward gap in the statutory scheme" because there is no gap to close. According to plaintiff, a refusal to create a new cause of action essentially grants defendants immunity with respect to their alleged tortious mismanagement of the Plan's assets, which constitutes an "awkward gap in the statutory scheme." We disagree. For reasons discussed, we presume that Congress deliberately omitted this remedy from the statutory scheme because the trustees' plan-management duties flow to participants and beneficiaries, not contributing employers. Further, we should exercise our limited lawmaking authority in this area only "'when it is necessary to effectuate the purposes of ERISA.'" *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220, 225 (6th Cir. 1994) (quoting *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992)). The purpose of ERISA is to "'promote the interests of employees and their beneficiaries in employee benefit plans.'" *Pfeil*,

671 F.3d at 590 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).  This purpose is not fulfilled by allowing contributing employers to sue trustees for negligence.  Relatedly, allowing contributing employers to sue trustees for negligence is unrelated to the purpose of the MPPAA, which Congress designed to protect multiemployer plan beneficiaries by providing contributing employers with an incentive to remain in financially unstable plans rather than immediately withdrawing from such plans.  *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416–17 (1995).  Accordingly, this court's recognition of a negligence cause of action will not close an "awkward gap in the statutory scheme."

Third, allowing contributing employers to sue trustees for negligent management is not essential to the promotion of fundamental ERISA policies.  In enacting ERISA, Congress stated:

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of *participants* in employee benefit plans and their *beneficiaries*, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (emphasis added).  In this regard, holding that trustees of a multiemployer plan owe contributing employers a duty of reasonable care regarding plan management is not *essential* to promote the fundamental policy of ERISA:  ensuring that private-sector workers would receive the pensions that their employers have promised them.  *See, e.g., Concrete Pipe & Prod., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 605–09 (1993).  The same can be said regarding the fundamental policy of the MPPAA.

Finally, plaintiff cites no authority in support of its novel common law negligence cause of action under ERISA or the MPPAA.  Indeed, it appears that no court has ever recognized the existence of a negligence claim in favor of contributing employers—under any circumstances— in the federal common law of pension plans.  *See* 3 Lee T. Polk, *ERISA Practice and Litigation* § 12:27 (2013).  The best case plaintiff offers in support is *Carl Colteryahn Dairy Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113 (3d Cir. 1988).  In that case, a contributing employer to a multiemployer pension plan brought suit against the plan's trustees, alleging that the employer was fraudulently induced to agree to a merger of two multiemployer plans that

ultimately caused the employer to accrue increased withdrawal liability. *Id.* at 115. The Third Circuit held that "under the federal common law of pension plans, [the] defrauded employer [ ] may sue in federal court for the return of any withdrawal liability sums that were assessed as a result of a fraudulent inducement to join the [f]und." *Id.* at 122. However, *Colteryahn* is distinguishable from the case at bar because the alleged wrongful conduct at issue was intentional—i.e. fraudulent—and the holding is limited to fraudulent inducement claims. *See Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989) (observing that *Colteryahn* recognized a federal common law claim by employer alleging that the fund had fraudulently assessed a large withdrawal penalty against it). For this reason, any argument that the logic of *Colteryahn* should be extended to encompass negligence claims is unpersuasive.

In sum, because Congress has established an extensive statutory framework and expressly announced its intention to occupy the field of private-sector pensions, and because we do not lightly create additional rights under the federal common law given these circumstances, we hold that a contributing employer to a multiemployer pension plan has no cause of action against plan trustees for negligent management under the federal common law of ERISA pension plans.

## IV.

For these reasons, we affirm the judgment of the district court.