**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0228n.06

Case No. 18-1728

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 30, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CHARLES R. HUNTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA; | ) | MICHIGAN |
| STERLING MORTGAGE AND | ) | |
| INVESTMENT COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: ROGERS, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Charles Hunter wants the IRS to enforce its tax lien on a home that he once owned. But because Hunter no longer has a legal interest in that home, the district court dismissed his claim. We affirm.

I.

Twenty years ago, Charles Hunter purchased a home in Michigan (the "Lakeside Property"). Five years later, he secured a mortgage with Wells Fargo on the Lakeside Property. But when Hunter failed to pay his federal taxes for several years, the IRS filed multiple liens against Hunter's "property and rights to property"—including the Lakeside Property.

To compound his financial woes, Hunter also defaulted on his mortgage. So Wells Fargo foreclosed on the Lakeside Property and sold it to Sterling Mortgage & Investment Company.

Wells Fargo tried to notify the IRS about the sale, but it sent the notice to the wrong address. As a result, Sterling bought the Lakeside Property with the government's liens still attached. *See* 26 U.S.C. § 7425(b).

The United States subsequently filed suit to enforce its liens against the Lakeside Property. The government sued both Sterling (the current property owner) and Hunter, who at that time still had a right to redeem the property under Michigan law. *See* Mich. Comp. Laws § 600.3240(8). The three parties eventually agreed to a voluntary dismissal without prejudice. Before the dismissal, the United States and Sterling had worked out a deal between themselves: Sterling would sell the Lakeside Property and split the "net profits" evenly with the United States. R. 8, Pg. ID 33. The United States would then apply its proceeds towards Hunter's tax liability. Shortly after Hunter's right to redeem the property lapsed, Sterling moved to evict Hunter from the Lakeside Property. *See* Mich. Comp. Laws § 600.3240(8).

In response, Hunter sued to quiet title to the Lakeside Property. In his putative quiet title action, Hunter sought (1) a declaratory judgment that the government's tax liens have priority over Sterling's interest in the property and (2) an order forcing the government to enforce its tax liens through a judicial sale. If the United States fully enforced its tax liens, Hunter argued, it would receive more money—and if the government received more money, he would owe less in tax liability.

Both Sterling and the United States moved to dismiss the case for lack of subject-matter jurisdiction. The district court granted their motion to dismiss, and we review that dismissal de novo. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017).

II.

As a matter of first principles, the United States, as the sovereign, has immunity from most lawsuits. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12 (1821); *see also* 1 William Blackstone, *Commentaries on the Laws of England* \*235 ("Hence it is, that no suit or action can be brought against the [sovereign], even in civil matters . . . ."). That immunity deprives a federal court of jurisdiction to hear cases brought against the United States. *See United States v. Sherwood*, 312 U.S. 584, 586–87 (1941). But Congress can waive this immunity and allow lawsuits against the federal government to go forward. *Id.* Such a waiver must be express, and courts must construe it narrowly. *Soriano v. United States*, 352 U.S. 270, 276 (1957). Here, Congress waived sovereign immunity from any action "to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1). Although Hunter named his complaint a "quiet title" action, he still must show that he has actually brought a "quiet title" action as that term is used in § 2410. If he cannot, then Congress did not waive sovereign immunity, and we lack jurisdiction over this suit.

Courts do not uniformly agree about the meaning of "quiet title" in § 2410. Some courts have read the words "quiet title" narrowly. These courts have said that Congress waived immunity only over disputes about *title* to property and not other, analogous disputes about *interests* in property. *E.g.*, *Raulerson v. United States*, 786 F.2d 1090, 1091–92 (11th Cir. 1986); *cf. Hopkins v. Walker*, 244 U.S. 486, 490–91 (1917) (distinguishing between traditional quiet title actions and analogous disputes about property interests); *accord Holland v. Challen*, 110 U.S. 15, 18 (1884). This interpretation follows the old common law approach, where quiet title actions aimed to end protracted lawsuits about who owned property. *See Holland*, 110 U.S. at 20. But other courts have interpreted Congress's waiver more broadly, saying that quiet title actions can also seek to

remove a *cloud* over already established title. *E.g.*, *United States v. Coson*, 286 F.2d 453, 457–58 (9th Cir. 1961); *see also Nationstar Mortg., LLC v. Humphrey*, No. 11–2185–STA, 2011 WL 3273077, at *4 & n.9 (W.D. Tenn. July 29, 2011) (collecting cases). This interpretation reflects the fact that, when Congress added the words "quiet title" to § 2410, most states had enacted statutes broadening quiet title actions to also include cloud-removal disputes. *See Wehrman v. Conklin*, 155 U.S. 314, 322 (1894); *see also Falik v. United States*, 343 F.2d 38, 41–42 (2d Cir. 1965); Pub. L. No. 780, 56 Stat. 1026, 1026 (1942) (adding "quiet title" to § 2410). In this case, we need not decide the precise extent to which Congress waived immunity because Hunter loses under either interpretation.

*Narrow title*. Under the narrower title-interpretation, Hunter did not bring a quiet title action because his complaint does not contest who holds title to the Lakeside Property. Instead, his complaint seeks two things: (1) a declaratory judgment that the government's tax liens have priority over Sterling's interest in the property and (2) an order forcing the government to enforce its tax liens through a judicial sale. Neither request requires a determination of who holds title to the Lakeside Property. Even if the government has superior tax liens, Sterling would still hold uncontested title to the Lakeside Property. *See Vereyken v. Annie's Place, Inc.*, 964 F.2d 593, 596 (6th Cir. 1992). Nothing in Hunter's complaint suggests otherwise. Accordingly, because Hunter does not challenge who has title to the Lakeside Property, he has not brought a quiet title action under the narrower title-interpretation. *See Raulerson*, 786 F.2d at 1091–92.

*Clouded title*. Alternatively, Hunter did not bring a quiet title action under the broader cloud-interpretation because he does not seek to remove a cloud over his *own* title. Hunter's complaint does, in a sense, seek to remove a cloud over the Lakeside Property: the government's tax liens. But in order to remove that cloud over the Lakeside Property's title, Hunter must have

title to that property. *Cf. Hopkins*, 244 U.S. at 489 ("It hardly requires statement that in [cases to remove cloud from a title] the facts showing the plaintiff's title . . . are essential parts of the plaintiff's cause of action."). Not only does Hunter lack title to the Lakeside Property, he also lacks any property interest in it. Michigan law defines the scope of Hunter's property rights. *In re Town Ctr. Flats, LLC*, 855 F.3d 721, 724 (6th Cir. 2017). Michigan law gave Hunter a right to redeem the Lakeside Property within six months of when Wells Fargo foreclosed on it and sold it to Sterling. Mich. Comp. Laws § 600.3240(8). But what Michigan law giveth, it also taketh away. When Hunter's six-month window closed in October 2017, his "right, title, and interest in and to the [Lakeside] property" extinguished. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942)); *see also* Mich. Comp. Laws § 600.3236. Without an interest in the Lakeside Property, Hunter cannot remove a cloud from its title. *Cf. Hopkins*, 244 U.S. at 489.

Hunter argues that this broader cloud-interpretation also encompasses suits by a lienholder who wants to determine lien priority—even if the lienholder does not hold title to the underlying property. *E.g.*, *McEndree v. Wilson*, 774 F. Supp. 1292, 1296–97 (D. Colo. 1991). But the courts that have permitted such quiet title actions to resolve lien priority have done so only when the plaintiff *himself* was a "private lienor." *United States v. Brosnan*, 363 U.S. 237, 244–46 (1960); *United States v. Morrison*, 247 F.2d 285, 290 (5th Cir. 1957). Here, Hunter is not a private lienor. Instead, he seeks to adjudicate the priority of *another party's* lien so that he can gain a derivative benefit: lower tax liability. If the United States fully enforces its superior tax lien against the Lakeside Property, Hunter argues, it will get more money. And if the United States gets more money, Hunter will owe less in tax liability. But no court—not even those adopting the broader cloud-interpretation—has ever suggested that Congress waived immunity from actions where a

non-titleholding, non-lien-holding third party sues to gain a derivative benefit. *See Kabakjian v. United States*, 267 F.3d 208, 209–11 (3d Cir. 2001) (allowing plaintiffs' quiet title suit to proceed when the plaintiffs alleged that they still *owned* the property because a tax sale was invalid). Doing so would stretch the waiver beyond any reasonable limit. Since courts should interpret Congress's waiver of sovereign immunity narrowly, we decline to adopt such a broad reading here. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Accordingly, sovereign immunity bars Hunter's suit against the United States. Since he alleged no independent claim against Sterling, the district court appropriately dismissed the case as to both defendants.

As a last resort, Hunter contends that we should equitably toll his right to redeem the Lakeside Property—thus giving him the legal interest he needs to bring a quiet title action. He alleges that both the government and Sterling secured his consent to dismiss the first lawsuit without telling him that they would subsequently enter into an agreement to sell the Lakeside Property. Then Hunter says that they waited until his redemption rights expired before bringing an eviction action against him to effectuate that agreement. *But see* Mich. Comp. Laws § 600.5714(1)(g) (requiring a party to wait until redemption rights have lapsed before filing an eviction action). Hunter claims that this conduct amounts to a "fraud on the court." But Hunter never argued before the district court that this conduct was fraudulent. Even making that accusation for the first time now, he presents no facts backing it up. Thus, we decline to consider this argument on appeal. *See Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pension Plan*, 744 F.3d 419, 424 (6th Cir. 2014) ("We do not address . . . arguments[] which were not fully presented to the district court.").

\*     \*     \*

Because Hunter has not brought a quiet title action under either the narrower title-interpretation or the broader cloud-interpretation, the United States retains immunity from his suit. Sovereign immunity deprives this court of jurisdiction over claims against the government. *Munaco v. United States*, 522 F.3d 651, 652–53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  Hunter has alleged no independent claims against Sterling.

We affirm.