NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0441n.06
No. 19-2364

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CINDY GAMRAT, | ) | **FILED** |
|  | ) | Jul 29, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| EDWARD MCBROOM; TIM L. BOWLIN; KEITH | ) | ON APPEAL FROM THE |
| ALLARD; BENJAMIN GRAHAM; JOSHUA | ) | UNITED STATES DISTRICT |
| CLINE; KEVIN G. COTTER; BROCK ALLEN | ) | COURT FOR THE WESTERN |
| SWARTZLE; NORM SAARI; HASSAN | ) | DISTRICT OF MICHIGAN |
| BEYDOUN, in their individual capacities, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

KETHLEDGE, Circuit Judge. The Michigan House of Representatives expelled one of its members, Cindy Gamrat, from office. Gamrat thereafter sued several people involved in that process. The district court dismissed her suit for failure to state a claim. For substantially the same reasons stated by the district court, we affirm.

We accept as true all factual allegations in Gamrat's complaint. *See DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014). In January 2015, Cindy Gamrat began a term as a member of the Michigan House of Representatives. She agreed to share three employees—Keith Allard, Benjamin Graham, and Joshua Cline (referred to here as the staff members)—with Todd Courser, a fellow representative. At some point, Gamrat and Courser, both married, began an affair.

The staff members soon reported that there were problems with Gamrat and Courser's combined office to the Speaker of the House (Kevin Cotter) and two of his staff (Norm Saari and Brock Swartzle). Cline quit in April. Over the next two months, Graham secretly recorded several conversations between himself, Gamrat, and Courser, in which the representatives discussed their affair and strategies to cover it up.

The House fired Allard and Graham on July 6. Later that day, they reported their concerns about Gamrat and Courser's behavior to the Business Director for the House, Tim Bowlin. When the House leadership did not act, the staff members then went to the *Detroit News*, which published a story about the affair and Courser's attempted cover-up. Immediately thereafter, Speaker Cotter directed Bowlin to investigate Gamrat and Courser's misconduct. The House also formed a Select Committee, chaired by Representative Edward McBroom, to investigate. Before the committee hearings started, Gamrat met with Majority Legal Counsel Hassan Beydoun, who opined that censure (rather than expulsion) would be appropriate. But on September 10, the Select Committee nonetheless recommended expulsion, and the next morning the House expelled Gamrat.

Gamrat thereafter sued the staff members; Beydoun, Bowlin, Cotter, McBroom, Saari, and Swartzle (referred to here as the House Defendants); her ex-husband; and two of his associates. She claimed, among other things, that the House Defendants had violated her due process rights, and that all the defendants violated eavesdropping, civil-stalking, and civil-conspiracy statutes. On March 15, 2018, the district court dismissed Gamrat's claims against the House Defendants and staff members Allard and Graham. Over a year later, the district court granted Cline's motion for judgment on the pleadings. The court also denied Gamrat's motions to amend her complaint for the second time and for relief from judgment. (The other defendants in the case were also dismissed, in separate orders.) This appeal followed.

We review de novo the district court's dismissals under Civil Rules 12(b)(6) and 12(c). *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gamrat argues that the House Defendants are not entitled to legislative immunity on her procedural due process claim. State legislators, as well as their aides and counsel, are immune from suit for "all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998); *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 507 (1975); *see also* U.S. Const. art. I, § 6, cl. 1; Mich. Const. 1963 art. IV, § 11. That activity includes actions that are "an integral part of the deliberative and communicative processes" by which lawmakers participate in matters within their jurisdiction. *Gravel v. United States*, 408 U.S. 606, 625 (1972).

Here, the House Defendants investigated Gamrat, recommended expelling her, and then voted to do so—all of which are integral parts of the expulsion process. *See id.* at 624–25. And that process is within the legislature's sole jurisdiction. *See* Mich. Const. 1963 art IV, § 16. Gamrat says that the House Defendants acted in bad faith, but "whether an act is legislative turns on the nature of the act," rather than on motive or intent. *Bogan*, 523 U.S. at 54. The House's expulsion of Gamrat was legislative activity, regardless of any bad faith, and Gamrat cannot sue the House Defendants for participating in that process. *Accord Whitener v. McWatters*, 112 F.3d 740, 742–44 (4th Cir. 1997).

Gamrat also argues that the district court should not have dismissed her wiretapping, eavesdropping, civil-stalking, and civil-conspiracy claims against the House Defendants and the staff members. Gamrat must put forth more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. For each of

Gamrat's claims, we take as true the facts alleged in both the amended and the proposed second amended complaint, for neither states a claim upon which relief may be granted.

Gamrat's first claim is that the defendants violated 18 U.S.C. § 2511, which "criminalizes the intentional interception of an electronic communication." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). Federal law provides a cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation" of § 2511. 18 U.S.C. § 2520. Gamrat alleged nowhere that any House Defendant acquired one of her communications during transmission; she made only the conclusory allegation that they received recordings that violated § 2511. That does not give rise to a claim under § 2520. *See Luis*, 833 F.3d at 629. For the staff members, the only specific, relevant allegation is that Graham illegally recorded private conversations between Gamrat and Courser. Gamrat points to her exhibits for support, and they suggest that she is referring to recordings that Graham made of several meetings between himself, Courser, and Gamrat in May and June 2015. The recordings' transcripts, however, show that Graham participated in all those conversations. As a participant, he did not violate the law by recording the conversations. *See* 18 U.S.C. § 2511(2)(d). The exhibits do not show that Graham recorded any other conversations. Thus, Gamrat fails to allege that any defendant violated the federal law against wiretapping.

Gamrat also claims that the defendants violated Michigan's eavesdropping laws, which prohibit using a device to eavesdrop on a conversation. *See* Mich. Comp. L. § 750.539 *et seq*. But under that law, participants in private conversations likewise may record those conversations. *See* *Sullivan v. Gray*, 324 N.W.2d 58, 60 (Mich. App. 1982) (per curiam). Her claims under this law fail for the same reasons as her claims under the federal law.

Gamrat's next claim is that the defendants stalked her. *See* Mich. Comp. L. § 600.2954(2). To state a civil-stalking claim, "there must be two or more acts of unconsented contact that actually cause emotional distress to the victim and would also cause a reasonable person such distress." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 691 N.W.2d 1, 7 (Mich. 2005). Most of Gamrat's allegations do not actually assert that the defendants contacted her. *See* Mich. Comp. Laws § 750.411h. Gamrat says that she received anonymous threatening texts, but none of the House Defendants or staff members sent those texts. She also alleges that the staff members followed her, but she does not allege that this caused her emotional distress. Thus, Gamrat does not plausibly allege a violation of Michigan's civil-stalking law.

Gamrat's final claim is for civil conspiracy. "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. App. 1986) (per curiam). Gamrat fails to state a plausible claim for any other actionable tort, so she also fails to state a claim for civil conspiracy.

Gamrat argues that the district court erred when it denied her motion for leave to file a second amended complaint on the ground that the amended complaint still failed to state a claim. We review that legal conclusion de novo. *See Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 461 (6th Cir. 2017). Gamrat moved to file a second amended complaint five months after the court's deadline to amend the pleadings, and ten months after the March 15 dismissal. Despite this delay, the motion merely repeated conclusory statements and cited entire lengthy documents (with scant reference to specific statements therein) in an attempt to revive claims that the district court had dismissed ten months prior. That information gave the court no cause to allow Gamrat to amend her complaint.

Finally, Gamrat asserts that the district court abused its discretion because it refused to revise its March 15 order under Civil Rule 54(b). That Rule allows a court to revise an interlocutory order "at any time" if, among other things, "new evidence" is available. *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018). The district court recognized that it had the authority to revise its order, but it chose not to do so for the same reason that it denied Gamrat leave to amend her complaint: the allegedly new information was conclusory. The court was well within its discretion to decline to revise its order.

The district court's judgment is affirmed.