**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0197n.06

No. 10-4274

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 22, 2013*
DEBORAH S. HUNT, Clerk

RICHARD LORETO, on behalf of himself and others )
similarly situated; LARRY BUFFA, on behalf of )
himself and others similarly situated, )
    )
    )  ON APPEAL FROM THE
    Plaintiffs-Appellants, )  UNITED STATES DISTRICT
    )  COURT FOR THE SOUTHERN
    v. )  DISTRICT OF OHIO
    )
THE PROCTER & GAMBLE COMPANY, )
    )
    Defendant-Appellee. )
    )

BEFORE: GRIFFIN and KETHLEDGE, Circuit Judges; and THAPAR, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiffs Richard Loreto and Larry Buffa appeal the district court's dismissal of their claims against Procter & Gamble for violation of various consumer-protection statutes. For the following reasons, we affirm in part and reverse in part.

I.

This proposed class action involves the charge that Procter & Gamble was unjustly enriched and violated the consumer-protection laws of all fifty States when it sold and marketed two new products in 2009: DayQuil Plus Vitamin C and NyQuil Plus Vitamin C. According to plaintiffs,

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

the company sought to exploit the commonly held, yet allegedly unfounded, belief that Vitamin C

is effective for treating cold symptoms by adding the vitamin to its DayQuil and NyQuil products

and using the following statements in its advertisements:

> Combining the powerful multi-symptom relief of DayQuil with more than 150% of the recommended value of vitamin C.

> VICKS NyQuil Cold & Flu Symptom Relief Plus Vitamin C provides multi-symptom cold and flu relief so you can get the sleep you need to enjoy an even sweeter tomorrow. Plus, you'll also replenish your body with 150% of the daily value of vitamin C.

> Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects. Aim for 500 mg a day.

> Fighting Cold and Flu Season. . . . Don't forget to take your daily vitamins. Consider taking extra vitamin C, vitamin A, and zinc, all of which may help you.

Plaintiffs purchased the products over competing ones in part because of these statements. They

allege that no scientific evidence supports the claim that Vitamin C can alleviate cold symptoms, and

that, but for Procter & Gamble's false or misleading statements to the contrary, plaintiffs would have

purchased a lower-priced competing product instead. Plaintiffs seek a refund of the purchase price.

They also request class treatment. Exercising original jurisdiction under the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d), the district court dismissed all of plaintiffs' claims. Plaintiffs

timely appealed.

II.

We first address which state's law applies. Ohio is the forum state, so we apply its choice-of-

law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Ohio's rules, "the

place of the injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (applying *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984)). New Jersey, plaintiffs' state of residence and the state where they purchased the products, was the "place of injury" here, so its law applies. *See id.*

Plaintiffs respond that Ohio law should apply because the advertising campaign they challenge emanated from Procter & Gamble's Ohio headquarters. They rely on two decisions —*Parker v. Berkley Premium Nutraceuticals, Inc.*, 2005 Ohio Misc. LEXIS 605 (Ohio C.P. 2005), and *Brown v. Market Development, Inc.*, 322 N.E.2d 367 (Ohio C.P. 1974). But we declined to follow those very decisions in *Pilgrim*, and *Pilgrim* is indistinguishable. *See Pilgrim*, 660 F.3d at 947. The district court correctly dismissed plaintiffs' claims under Ohio law.

III.

That leaves plaintiffs' claim under New Jersey's Consumer Fraud Act, which the district court dismissed under Federal Rule of Civil Procedure 12(b)(6).[1] We review that decision de novo. *See Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011).

The district court offered alternative reasons for dismissing plaintiffs' New Jersey claim. It determined first that the claim was preempted by the Federal Food, Drug, and Cosmetic Act (the "FDCA" or "Act"). It also ruled that the claim was not cognizable under New Jersey law.

---

[1]Plaintiffs abandoned their unjust-enrichment claim by not addressing it in their opening brief. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 n.1 (6th Cir. 2011).

A.

We first consider Procter & Gamble's preemption argument. "The FDCA leaves no doubt that it is the Federal Government rather than private litigants who [is] authorized to file suit for noncompliance with" its substantive provisions. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *see Bailey v. Johnson*, 48 F.3d 965, 966 (6th Cir. 1995) (recognizing that the FDCA creates no express or implied private cause of action). The statute's public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA. Under principles of "implied preemption," therefore, private litigants may not "bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA[.]" *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (citing *Buckman Co.*, 531 U.S. at 352–53); *see In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290–91 (C.D. Cal. 2008) ("[P]laintiffs may not use other federal statutes or state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA.").

The question, then, is how to determine whether a claim formally asserted under state law is in substance one seeking to enforce the FDCA. The Supreme Court supplied the test in *Buckman*: If the claim would not exist in the absence of the FDCA, it is impliedly preempted. 531 U.S. at 353. In other words:

> [T]he conduct on which the claim is premised must be the type of conduct that would
> traditionally give rise to liability under state law—and that would give rise to liability

> under state law even if the FDCA had never been enacted. If the defendant's conduct is not of this type, then the plaintiff is effectively suing for a violation of the FDCA (no matter how the plaintiff labels the claim), and the plaintiff's claim is thus impliedly preempted under *Buckman*.

*Riley*, 625 F. Supp. 2d at 777. In *Buckman*, for example, the Court deemed preempted a state tort claim that the defendant defrauded the FDA in the course of obtaining approval for its medical devices and that, as a result, the devices improperly obtained market clearance and were later used to the plaintiffs' detriment. The claims, the Court held, did not rely on "traditional state tort law which had predated" the FDCA, for the Act's existence was "a critical element" of the plaintiffs' case. 531 U.S. at 353. In other words, were it not for the federal regulatory scheme the FDCA created, there would have been no fraud that could support the tort claim.

In this case, plaintiffs have asserted claims under state consumer-protection laws based upon two different theories, only one of which is impliedly preempted by the FDCA.

First, the preempted theory. Plaintiffs allege that Procter & Gamble omitted telling consumers that its products were "illegal," and had plaintiffs known it, they wouldn't have purchased the products. The products were illegal, plaintiffs maintain, because their labeling did not comply with the FDCA's requirements. This theory of liability depends entirely upon an FDCA violation—*i.e.*, the *only* reason Procter & Gamble's products were allegedly "illegal" was because they failed to comply with FDCA labeling requirements. The theory is impliedly preempted by federal law.

Apart from this clearly preempted theory, plaintiffs also allege that Procter & Gamble violated state law when it represented to the public that taking Vitamin C can blunt the effects of a

cold, a statement plaintiffs contend is false or misleading. These statements allegedly induced plaintiffs to purchase the advertised products instead of a lower-priced competitor's product not containing Vitamin C. This theory relies solely on traditional state tort law predating the FDCA, and would exist in the absence of the Act. *Buckman*, 531 U.S. at 353. This claim is not preempted.

To be sure, the complaint does include extensive reference to a warning letter the FDA issued to Procter & Gamble concerning its products, which might suggest plaintiffs' second theory also depends upon the FDCA. That letter warns that FDA regulations do not permit combining Vitamin C with any of the active ingredients contained in DayQuil and NyQuil in part because the evidence is "insufficient to classify vitamin C as safe and effective" for over-the-counter use. Even though the FDA has apparently concluded that Vitamin C has not been proven effective in cold treatment, plaintiffs' claim does not depend upon this determination and would logically exist even in its absence. *Cf. In re Epogen*, 590 F. Supp. 2d at 1291 ("[S]ome false statements made in connection with prescription drug marketing are actionable under state or federal law, even if their truth may be generally within the purview of the FDA." (citation and internal quotation marks omitted)).

B.

The district court alternatively held that plaintiffs failed to state a claim under New Jersey's Consumer Fraud Act because they did not plausibly allege an "ascertainable loss." N.J. Rev. Stat. § 56:8-19; *see Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (an ascertainable loss is "without any question" an element of a private plaintiff's prima facie case under the Act).

"Ascertainable loss" is not defined in the statute, and "[t]here is little that illuminates the precise meaning that the Legislature intended in respect of the term." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). Recognizing this analytical void, the New Jersey Supreme Court offered guidance in *Thiedemann*. In order to reach a jury, the court instructed, "a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an *actual loss*." *Id.* (emphasis added). An "out-of-pocket loss" will do. *Id.* Moreover, a plaintiff's burden at summary judgment is to put forth "evidence of loss that is not hypothetical or illusory"; he must present the evidence "with some certainty demonstrating that it is capable of calculation." *Id.*; *see also Bosland*, 964 A.2d at 749–50 (an ascertainable loss is "quantifiable or measurable," not "merely theoretical").

Here, plaintiffs allege that they suffered an out-of-pocket loss when they purchased DayQuil or NyQuil Plus Vitamin C instead of a lower-priced competing cold medicine that did not contain the vitamin. The district court found this loss insufficient as a matter of law. In its view, plaintiffs suffered no loss in the absence of any allegation that the product failed to treat their colds, one plaintiffs never made. In other words, plaintiffs received precisely what they paid for—an effective cold remedy.

The district court erred by ignoring the allegation that plaintiffs would have purchased a lower-priced cold remedy (thus saving money) were it not for Procter & Gamble's alleged misrepresentations. The "quantifiable or measurable" loss in this case is the difference in price

between Procter & Gamble's product and a lower-priced competing product.[2] The products' overall

effectiveness in treating plaintiffs' cold symptoms does not undercut a showing of ascertainable loss.

*Cf. Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 349–50 (2d Cir. 2003) (finding loss sufficient

to support a similar claim under New Jersey's Consumer Fraud Act, explaining that the plaintiffs'

claim was "unaffected" by whether anyone was physically injured by the defendant's drug; the fact

that the plaintiffs purchased the defendant's product instead of a cheaper alternative was sufficient

to demonstrate loss); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,

701 F. Supp. 2d 356, 380–81 (E.D. N.Y. 2010) (allowing a similar claim under New Jersey law to

proceed, noting that the plaintiffs' inability to point to any physical injuries from the product was

"immaterial"; economic loss existed where, as here, the plaintiffs alleged that the defendant's

misrepresentations were the very reason plaintiffs purchased the product); *In re Bextra & Celebrex

Mktg., Sales Practices & Prod. Liability Litig.*, No. MDL 05–01699, 2007 WL 2028408, at *5–6

(N.D. Cal. July 10, 2007) (finding economic loss where the plaintiffs alleged "that physicians

prescribed Celebrex and insurers paid for it precisely because defendants falsely marketed it as

having fewer gastrointestinal symptoms than the [cheaper] available over-the-counter NSAIDs"; "in

other words, plaintiffs could have and would have received exactly the same relief at a much lower

cost but for defendants' deception").

---

[2]Although plaintiffs seek a refund of the full purchase price, even if they prevail, they are not entitled to one. Their claim is that they would have purchased a lower-priced product not containing Vitamin C but for the misrepresentation, not that they would have foregone purchasing *any* product.

IV.

Procter & Gamble offers alternative grounds for affirming. *See Harchar v. United States (In re Harchar)*, 694 F.3d 639, 644 (6th Cir. 2012) ("We may affirm the district court's dismissal of a plaintiff's claim on any preserved ground, including a ground not relied upon by the district court.").

First, Procter & Gamble contends that plaintiffs lack Article III standing because they can demonstrate no "injury in fact." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This argument simply repackages the company's argument regarding ascertainable loss. Plaintiffs' allegation that they suffered a monetary loss by paying more for a cold remedy because of the company's misrepresentation establishes a cognizable injury.

The cases Procter & Gamble relies upon are inapposite. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319–21 (5th Cir. 2002) (finding no legal injury where the plaintiffs purchased a drug that failed to warn of possible side-effects yet performed as expected; however, the plaintiffs did not allege that they would have purchased a lower-priced alternative but for the failure to warn); *Medley v. Johnson & Johnson Consumer Cos.*, No. 10-cv-02291, 2011 WL 159674, at *2 & n.2 (D.N.J. Jan. 18, 2011) (holding that there was no injury where parents who purchased baby shampoo used the product without adverse health effects and only later discovered that the product contained a potentially harmful chemical; however, the parents never alleged an economic injury from paying a premium for the product); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177–78 (D.D.C. 2003) (finding no standing where the plaintiff suffered no physical injury from the drug, declining to recognize an economic injury based on the claim that the drug's price was inflated because of false

advertising; however, the plaintiff never claimed he would have purchased a lower-priced alternative but for the advertising).

Second, Procter & Gamble contends that plaintiffs' claims fail because the four statements upon which they are based—set forth in section I above—are neither false nor plausibly misleading. We agree with respect to all but one statement: "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects."[3] It is plausible that plaintiffs could prove that Vitamin C either has *no* effect on cold symptoms or has such a marginal effect that advertising its ability to blunt cold symptoms creates a "capacity to mislead" the average consumer. *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002); *see also Miller v. Am. Family Publishers*, 663 A.2d 643, 653–54 (N.J. Super. Ct. Ch. Div. 1995) ("[A] claim of literal truth will not constitute a defense to a charge that the overall impression created by an advertisement is misleading and deceptive to an ordinary reader."). The company responds that the statement, "taken in its entirety, clearly and expressly disclaims the usefulness of vitamin C *as a cure for colds*." (Emphasis added.) True enough, but the statement goes beyond disclaiming the vitamin's ability to cure a cold; it claims the vitamin can *blunt the effects of a cold*, a claim plaintiffs have plausibly alleged is false or misleading.

---

[3]The complaint states no basis upon which to conclude that the three remaining statements are false, and any allegation that they are misleading to average consumers is implausible. Although the statement "Consider taking extra vitamin C, vitamin A, and zinc, all of which may help you" presents a somewhat closer question, we ultimately find that the statement cannot be misleading because it does not state that the listed products will do anything, only that they might. *See New Jersey Citizen Action v. Schering-Plough*, 842 A.2d 174, 177 (N.J. Super. App. Div. 2008) (holding that, to be actionable under the New Jersey Consumer Fraud Act, allegedly misleading statements must be "statements of fact"); *Wendling v. Pfizer, Inc.*, No. L-348-04, 2008 WL 833549, at *3–5 (N.J. Super. App. Div. Mar. 31, 2008) (per curiam) (same).

V.

Finally, the district court dismissed plaintiffs' claims under the consumer-protection laws of the other forty-nine States because it found plaintiffs could state none of their own claims. Now that we have revived a portion of plaintiffs' New Jersey statutory claim, the district court's rationale no longer applies. In the ordinary case, we would reinstate the claims and allow the district court on remand to consider whether class treatment is appropriate. *See Glazer v. Chase Home Fin. LLC*, — F.3d — , 2013 WL 141699, at *3 n.2 (6th Cir. Jan. 14, 2013). However, in view of our recent decision in *Pilgrim* that a federal district court in Ohio could not certify a nationwide class of members asserting consumer-protection claims under all fifty States given Ohio's choice-of-law rules and the material differences between the States' consumer-protection laws, 660 F.3d at 945, reinstating the claims would be futile. Therefore, we affirm the dismissal of these claims.

VI.

For these reasons, we reverse the portion of the judgment dismissing plaintiffs' claim under New Jersey's Consumer Fraud Act predicated on Procter & Gamble's statement in its advertising that Vitamin C "won't cure a cold, but . . . can help blunt its effects." In all other respects, we affirm.