LUCERO, Circuit Judge,
concurring in part and dissenting in part.
According to the majority, Patricia Caplinger cannot recover for harms, long cognizable under state law, that flow directly from Medtronic’s alleged violations of federal laws forbidding the introduction of misbranded or adulterated medical devices into the market. This result is compelled neither by binding precedent nor by the plain text and clear purpose of the Federal Food, Drug, and Cosmetic Act as amended by the Medical Devices Amendments of 1976 (“MDA”), which were enacted to promote the safety of medical devices through honest labeling and promotion.[1]
Federalism concerns caution against rushing to preempt state law. See The Federalist No. 33, at 206-08 (Alexander Hamilton) (J. Cooke ed.1961). Those concerns are heightened when, as here, the district court misapprehended the scope of relevant law. Although I agree with most of the majority’s preemption analysis, I write separately to express these concerns, discuss how the district court misapprehended law, and explain why some of Caplinger’s claims are at least plausibly parallel and should survive a motion to dismiss at this early stage of the litigation.
I
Caplinger alleges that Medtronic promoted and marketed uses of its Infuse product to Caplinger and her physicians that were not approved by the Food and Drug Administration (“FDA”). This “off-label” promotion allegedly induced Caplinger and her physicians to implant Infuse in Caplinger’s spine using a technique that had never been evaluated by the FDA.[2] A Medtronic representative, acting in the course of her employment, actively provided information regarding Infuse as it applied to Caplinger’s particular surgery and was present during her surgery. Ca *1348 plinger’s complaint details extensive evidence suggesting that Medtronic intentionally introduced Infuse into the market for misbranded or adulterated uses, including the specific off-label use that harmed Caplinger. This includes evidence that Medtronic improperly bribed physicians, paid “kickbacks” to promote these off-label uses, and funded misleading scientific studies that misrepresented the safety of these uses.[3] Caplinger alleges that Medtronic’s conduct violated the MDA, FDA regulations, and state tort law.[4]
II
After a device has been submitted for Premarket Approval (“PMA”), the FDA carefully studies its safety “under the conditions of use prescribed, recommended, or suggested in the proposed labeling” by the manufacturer. 21 U.S.C. § 360e(d)(2)(A). A device can be safe for one use but unsafe for many others. For instance, an artificial heart valve safe for use in adults may not be safe for pediatric use. Immunizing from liability a medical device company that sells or markets a device for untested, unapproved, and potentially unsafe uses would completely subvert the purpose of the PMA process and provide perverse incentives for device companies as they seek federal approval.
The FDA guards against this danger by forbidding manufacturers from introducing “misbranded” or “adulterated” devices into the marketplace. §§ 351, 352; see also 21 C.F.R. § 814.80 (forbidding devices to be “manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device”). An otherwise approved device is misbranded if, among other things, “its labeling is false or misleading in any particular,” its label does not bear' “adequate directions for use,” or the manufacturer of a restricted device uses “false or misleading advertising.” 21 U.S.C. § 352. The FDA has sensibly concluded that a manufacturer who introduces a medical device into the market for uses not contemplated in the PMA process violates the prohibition on selling devices with false, misleading, and/or inadequate labeling. See 21 C.F.R. §§ 801.5, 801.109. Specifically, § 801.5 explains that “[a]dequate directions for use means directions under which the layman can use a device safely and for the purposes for which it is intended ” Id. (emphasis added). Another regulation, § 801.4, explains that references to intended use in § 801.5 “refer to the objective intent of the persons legally responsible for the labeling of devices” and are “determined by such persons’ expressions or may be shown by the circumstances surrounding the distribution of the article.” § 801.4.- The regulation further provides:
This objective intent may, for example, be shown by labeling claims, advertising *1349 matter, or oral or written statements by such persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised.
Id. For prescription devices, such as Infuse, the labeling must include adequate information “under which practitioners licensed by law to administer the device can use the device safely and for the purpose for which it is intended, including all purposes for which it is advertised or represented.” § 801.109(c) (emphasis added).
If a manufacturer wishes to sell a device for an intended use not analyzed in the PMA process, it must generally “submit a PMA supplement for review and approval by FDA.” § 814.39. A device sold in violation of that requirement is considered “adulterated.” 21 U.S.C. § 351.
These prohibitions against misbranding or adulteration do not limit the ability of doctors to exercise professional judgment in their use of approved devices. As the majority notes, a medical practitioner does not violate federal law by using a medical device off-label. See § 396. However, practitioners who use devices off-label are not excused from their legal responsibilities. Traditional state tort remedies such as negligence and malpractice ensure that those practitioners employ off-label devices' in line with the professional standard of care.
Unlike the patient protection achieved by practitioner liability for off-label use, the result of allowing injured individuals to pursue state tort remedies against medical device manufacturers who legally sold and marketed FDA-approved devices would be an undue burden on those manufacturers. To avoid federal liability, each modification made to a device in order to forestall such a state tort claim would need to comply with the exacting PMA process. See Buckman Co. v. Plaintiffs’ Legal Comm., 531 U.S. 341, 344-45, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) (explaining that “the PMA process is ordinarily quite time consuming because the FDA’s review requires an ‘average of 1,200 hours [for] each submission’ ” (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996))). Congress’ solution to this problem was enacting § 360k(a). Pursuant to this provision, a medical device manufacturer who complies with the PMA process and the FDA’s marketing regulations cannot be held liable under state law for injuries resulting from a physician’s off-label use of a medical device. Riegel v. Medtronic, Inc., 552 U.S. 312, 330, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (holding state law tort claims preempted when plaintiff asserted “that Medtronic’s device violated state tort law notwithstanding compliance with the relevant federal requirements ” (emphasis added)); Walker v. Medtronic, Inc., 670 F.3d 569, 581 (4th Cir.2012) (explaining that state law tort claims stemming from the failure of “devices that were designed, manufactured, and sold in accordance with the terms of their premarket approval were preempted” (emphasis added)).
In contrast, when a plaintiff alleges harms predicated on a manufacturer’s violation of both FDA regulations and “parallel” state law duties, the enforcement of state tort law complements the federal scheme. See Riegel, 552 U.S. at 330, 128 S.Ct. 999; see also Lohr, 518 U.S. at. 513, 116 S.Ct. 2240 (O’Connor, J., concurring in part and dissenting in part) (“[T]he threat of a damages remedy will give manufacturers an additional cause to comply.... Section 360k does not preclude States from imposing different or additional remedies, but only different or additional requirements.”). This is a form of “cooperative *1350 federalism” that invites, but does not require, states to deploy their traditional police powers to provide remedies that reinforce federal standards. See New York v. United States, 505 U.S. 144, 167-68, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (discussing cooperative federalism); see generally Jessica Bulman-Pozen & Heather K. Gerken, Uncooperative Federalism, 118 Yale L.J. 1256 (2009) (explaining how cooperative federalism structures the relationship between states and the federal government). With the MDA, Congress has provided a powerful example of how our federal system can work to efficiently implement national regulations while simultaneously respecting the role of states in that system.
Thus, § 360(k)(a) does not expressly preempt the state law claims of a plaintiff like Caplinger who alleges that: (1) the medical device that injured her was misbranded or adulterated in violation of federal law; (2) the violation of federal law that caused the product to become misbranded or adulterated is also a violation of state law; and (3) her use of the device resulted in harms with parallel state law remedies. See Bausch v. Stryker Corp., 630 F.3d 546, 553 (7th Cir.2010) (concluding that “section 360k provides immunity for manufacturers of new Class III medical devices to the extent that they comply with federal law, but it does not protect them if they have violated federal law”).
To hold otherwise would “have the perverse effect of granting complete immunity” from state law torts stemming from misbranding and adulteration practices forbidden by federal law and regulation “to an entire industry that, in the judgment of Congress, needed more stringent regulation in order to provide for the safety and effectiveness of medical devices intended for human use.” Lohr, 518 U.S. at 487, 116 S.Ct. 2240 (quotation omitted). Moreover, allowing medical device companies to escape state tort liability in such a situation would improperly shift the risk of liability from device companies that intentionally mislead physicians to the physicians who rely upon that misleading advice when deciding to utilize a device off-label. Congress sensibly refused to establish such a dystopic regime.
Ill
I suspect that the majority would not disagree with the above preemption analysis. Our disagreement in this case stems primarily from our varying characterization of Caplinger’s complaint and her appellate briefing. In my view, the majority holds Caplinger’s complaint and appellate briefing to an excessively stringent standard that places the onus on her to affirmatively demonstrate that state law claims are parallel to federal requirements. The majority does this by minimizing the scope of her state tort claims and their relationship with the relevant federal laws. I admit that Caplinger’s briefing on the topic, especially before the district court, was not a model of clarity, but the presence of parallel state claims in Caplinger’s complaint is certainly more apparent than in the operative complaint in Lohr, where the Supreme Court allowed a suit to proceed on remand. See 518 U.S. at 495, 116 S.Ct. 2240 (allowing the Lohrs’ suit against Medtronic to proceed despite the fact that “the precise contours of their theory of recovery have not yet been defined” because “it is clear that the Lohrs’ allegations may include claims that Medtronic has, to the extent that they exist, violated FDA regulations”). Moreover, because the district court based its dismissal on a mistaken understanding of the MDA and relevant FDA regulations, and failed to compare the elements of state tort law with the federal requirements, Caplinger *1351 should be provided an opportunity to make her case with the regulatory regime properly understood.
A
As the majority explains, federal law “does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations.” Riegel, 552 U.S. at 330, 128 S.Ct. 999. Such a claim seeks a “parallel” remedy and is not expressly preempted by § 360k(a) if it does not impose any requirements with respect to safety or effectiveness that are “different from, or in addition to, federal requirements.” Id. at 328, 128 S.Ct. 999 (quotation and citation omitted). Preemption is an affirmative defense, and the defendant bears the burden of proof. See Emerson v. Kan. City S. Ry. Co., 503 F.3d 1126, 1133-34 (10th Cir.2007); see also De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); Stengel v. Medtronic Inc., 704 F.3d 1224, 1227 (9th Cir.2013) (en banc) (explaining that “[pjarties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law” (quotation omitted)). Caplinger has properly alleged facts in her complaint “demonstrating the presence of the elements of a parallel claim” and she has pointed “to specific PMA requirements that have been violated.” Wolicki-Gables v. Arrow Int’l, Inc., 634 F.3d 1296, 1302 (11th Cir.2011). To establish that Caplinger’s claims are expressly preempted, Medtronic must affirmatively show that her state tort claims are not “parallel” to the alleged federal violation. And to judge whether a plaintiffs state law claims are genuinely parallel, a district court must consider the elements “to determine whether these claims impose requirements that differ from or are in addition to federal requirements.” Hughes v. Boston Scientific Corp., 631 F.3d 762, 768 (5th Cir.2011).
Crucially, federal law and state law remedies need not be identical in order to be parallel and thus avoid express preemption. See Lohr, 518 U.S. at 495, 116 S.Ct. 2240; see also Bates, 544 U.S. 431, 454, 125 S.Ct. 1788 (2005) (holding that “to survive pre-emption, the state-law requirement need not be phrased in the identical language as its corresponding [statutory] requirement; it would be surprising if a common-law requirement used the same phraseology as [the statute]”). As the Court explained in Lohr, “additional elements of the state-law cause of action” requiring plaintiffs to show that “violations were the result of negligent conduct, or that they created an unreasonable hazard for users of the product ... would make the state requirements narrower, not broader, than the federal requirement.” 518 U.S. at 494, 116 S.Ct. 2240. For example, in the context of misbranded or adulterated medical devices, a state may permissibly determine that it only wishes to provide private remedies to individuals who can demonstrate that they relied upon false statements or omissions about the safety of the misbranded products, or that the misbranding or adulteration created an unreasonable hazard for its citizens.
B
The majority does not reach the question of implied preemption, because it holds that all of Caplinger’s claims were either insufficiently pled or expressly preempted. The district court did reach the question, incorrectly holding that several of Caplinger’s claims relating to Medtronic’s “off-label marketing” would be impliedly preempted. Some otherwise parallel state claims are impliedly *1352 preempted because Congress has determined that actions to enforce FDA requirements related to medical devices “shall be by and in the name of the United States.” § 337(a). This language has been interpreted by the Supreme Court to impliedly preempt claims that “exist solely by virtue” of federal requirements. Buckman, 531 U.S. at 353, 121 S.Ct. 1012. This language does not, however, preempt claims that would traditionally sound in state tort law, such as Lohr’s “common-law negligence action against the manufacturer of an allegedly defective pacemaker lead.” Buckman, 531 U.S. at 352, 121 S.Ct. 1012.
The contours of implied preemption are eloquently explained by the Sixth Circuit in Loreto v. Procter & Gamble Co., 515 Fed.Appx. 576 (6th Cir.2013) (unpublished). Loreto held that Buckman preempted a claim alleging that Procter & Gamble failed to tell consumers that its products were “illegal” when that claim’s theory of liability depended “entirely upon an FDCA [Federal Food, Drug, and Cosmetic Act] violation — ie., the only reason Procter & Gamble’s products were allegedly ‘illegal’ was because they failed to comply with FDCA labeling requirements.” 515 Fed.Appx. at 579. But the court allowed a claim to proceed alleging that Procter & Gamble made false or misleading statements regarding the same product, because the false-or-misleading “theory relies solely on traditional state tort law predating the FDCA, and would exist in the absence of the Act.” Id. at 580; see also Hughes, 631 F.3d at 775 (holding that state tort law failure-to-warn claim was not impliedly preempted); Bausch, 630 F.3d at 557 (holding that tort law claims based on manufacturing defects were not impliedly preempted).
As discussed below, it is clear that at least some of Caplinger’s claims are not dependent entirely upon a violation of federal law. Instead, they are grounded in traditional state-law duties that predate the MDA and would be cognizable even if the MDA did not exist. These claims are not impliedly preempted.
IV
According to the district court, Caplinger’s state law claims were either not genuinely parallel to the federal laws relating to off-label promotion or were impliedly preempted because they were entirely based upon those laws and “even the concept of ‘off-label use’ is a creature of the FDCA, is defined by the FDCA, and is not part of Oklahoma substantive law.” Caplinger v. Medtronic, Inc., 921 F.Supp.2d 1206, 1219-20 (W.D.Okla.2013). This misstates the scope of federal-law violations alleged in Caplinger’s complaint, artificially narrowing their grounds. Federal regulations prohibit the promotion of off-label uses, which might itself form the basis of an appropriately parallel state law claim. But that act of forbidden promotion does not capture the extent of Medtronic’s alleged federal violations, or the state tort claims Caplinger specifically raised in her complaint. Instead, Medtronic’s allegedly illegal promotion of Infuse, including Medtronic’s advertising and oral and written statements made by its representatives, is properly viewed as evidence that Infuse was misbranded and/or adulterated in violation of the law. See United States v. Caronia, 703 F.3d 149, 154 (2d Cir.2012) (explaining that misbranding may be proven by, “among other evidence, oral or written statements by [persons legally responsible for the labeling of drugs] or their representatives and the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised” (quotation *1353 omitted)); see also 21 C.F.R. § 801.4 (explaining that “intended use” of a device may be shown “by the circumstances that the article is ... offered and used for a purpose for which it is neither labeled nor advertised”). Caplinger explicitly alleges violations of 21 U.S.C. § 331, which prohibits “[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.” Id. As a result, if Caplinger can prove that Infuse was misbranded or adulterated, her state law claims are not preempted so long as the federal violation that caused the devices to be misbranded is also a violation of some state law that does not impose requirements “different from, or in addition to” the federal prohibitions concerning misbranded or adulterated devices.
Applying this analysis, I would hold that Caplinger’s claims based on failure to warn and negligence have been sufficiently pled to avoid preemption at this stage of the litigation. For each of these claims, Caplinger alleges that exactly the same conduct that violated federal device requirements also violated state law.
Although Caplinger’s claims could end up being preempted as the case proceeds, the burden of establishing preemption at this stage falls upon Medtronic, and in my view it has not met that burden.
A
As a preliminary matter, I agree with the majority that Caplinger’s complaint currently fails to state her fraud claims with the particularity required by Fed.R.Civ.P. 9(b). I also agree that her warranty claim was not sufficiently pled. However, these issues are closer than the majority concludes. Federal law explicitly forbids medical device manufacturers from engaging in false or misleading advertising. See §§ 331(a), 352(q)(l). With this in mind, and as the majority acknowledges, adequately pled state-law fraud claims bottomed on a device manufacturer’s false or misleading advertising may escape preemption. Moreover, an adequately pled warranty claim should easily escape preemption. As the court in Houston v. Medtronic, Inc., 957 F.Supp.2d 1166 (C.D.Cal.2013), explained:
[Fjederal law already prohibits false or misleading off-label promotion. Therefore, to the extent that Plaintiff seeks to impose liability on Defendants for voluntarily making misleading warranties outside the label, Plaintiff is not imposing any requirement different from or additional to what federal law already requires. In other words, to avoid state law liability on this claim, Defendants need only to refrain from making misleading warranties, which adds no burden beyond what federal law already imposes. Nor is the express warranty claim impliedly preempted under Buckman, as a claim for express breach of warranty finds its origin in traditional state law that predates the FDCA.
Id. at 1180-81. This conclusion is consistent with the developing consensus regarding the scope of preemption in this context. See Beavers-Gabriel v. Medtronic, Inc., 15 F.Supp.3d 1021 (D.Haw.2014) (holding that express warranty claim survives preemption); Schouest v. Medtronic, Inc., 13 F.Supp.3d. 692, 707 (S.D.Tex.2014) (same); Arvizu v. Medtronic Inc., 41 F.Supp.3d 783, 793 (D.Ariz.2014) (explaining that “[sjeveral courts have found that claims for breach of express warranty are neither expressly nor impliedly preempted in the context of off-label promotion”); see also Scovil v. Medtronic Inc., No. 2:14-CV-00213-APG, 2015 WL 880614, at *12 (D.Nev. Mar. 2, 2015) (unpublished) (similar); Wright v. Medtronic, Inc., No. 1:13- *1354 CV-716, 2015 WL 328596, at *15 (W.D.Mich. Jan. 23, 2015) (unpublished) (similar); Arthur v. Medtronic, Inc., No. 4:14-CV-52 (CEJ), 2014 WL 3894365, at *8 (E.D.Mo. Aug. 11, 2014) (unpublished) (similar).
The district court denied Caplinger’s motion to reconsider or, in the alternative, for leave to amend because it concluded many of her claims were necessarily preempted. Remand for the district court to apply á proper understanding of preemption would allow Caplinger to amend her complaint and possibly state viable fraud and warranty claims. See Fed.R.Civ.P. 15; Grossman v. Novell, Inc., 120 F.3d 1112, 1126 (10th Cir.1997) (holding that it is an abuse of discretion for a district court to refuse leave to amend if the stated reasons are “incorrect as a matter of law”).
B
In contrast, I would hold that Caplinger’s failure-to-warn and negligence claims are not clearly preempted at this stage of the litigation and are also plausibly stated. Caplinger contends that Medtronic had a state law duty to warn both the plaintiff and her physician about the dangers associated with off-label use of Infuse. The district court concluded that this claim was expressly or impliedly preempted. To the extent that her claim is predicated on a general failure to warn about off-label uses or asserts a state-imposed duty to include different or additional labeling, I agree with the majority and the district court that it is preempted by § 360k(a) or Buckman.
However, in my judgment, Caplinger may be advancing a more specific failure-to-warn claim that survives preemption. A medical device must contain directions that are adequate for its intended use. See 21 C.F.R. §§ 801.5, 801.109. A device’s “intended use” is determined by “the objective intent of the persons legally responsible for the labeling of devices.” § 801.4. Successful traversal of the PMA process means that the FDA has conclusively determined that a device is adequately labeled with respect to the intended use for which it was approved. See 21 U.S.C. § 360c(a)(1)(C)(ii)(II), 360c(a)(2)(B). But in her complaint, Caplinger incorporated allegations, supported by facts, that Medtronic misbranded Infuse in violation of federal law because it sold Infuse for an intended use not approved by the FDA. This would render its labeling no longer necessarily “adequate” under federal law. See 21 C.F.R. § 801.109(c). Caplinger’s assertions relating to “advertising and oral and written representations to her, her doctor, and others” (Majority Op. 1341), which the majority seems to read as irrelevant to the question at hand, likely have the purpose of demonstrating the existence of improper “purposes for which [Infuse] is intended.” § 801.5.
Caplinger also alleged that even as it promoted Infuse in violation of those requirements, Medtronic failed to include adequate warnings and directions for the misbranded product that it was promoting. Other courts have imagined just this scenario as the type of “narrow failure-to-warn claim that would escape preemption.” Riley v. Cordis Corp., 625 F.Supp.2d 769, 783 (D.Minn.2009).
In Oklahoma, the elements of a product liability failure-to-warn claim are: (1) “the product was the cause of the injury”; (2) “the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer’s possession and control”; and (3) the defect “made the article unreasonably dangerous.” Kirkland v. Gen. Motors Corp., 521 P.2d 1353, 1363 (Okla.1974). That defect “can stem from either a dangerous design *1355 or an inadequate warning about the product’s dangers.” Braswell v. Cincinnati Inc., 731 F.3d 1081, 1085 (10th Cir.2013) (applying Oklahoma law); see also Tansy v. Dacomed Corp., 890 P.2d 881, 886 (Okla.1994) (observing that “inadequate warmings” can render a product defective). Like federal medical device law, Oklahoma law considers an object’s intended use when determining if a warning is sufficient to avoid making the product unreasonably dangerous. See Smith v. U.S. Gypsum Co., 612 P.2d 251, 256 (Okla.1980); Kirkland, 521 P.2d at 1366 (holding that “[i]f the plaintiff is using the product for some purpose for which it was not intended and is consequently injured, he should not recover”). Moreover, like federal law, Oklahoma law specifically extends protection from defective design claims, including failure-to-warn claims, when “the product is properly manufactured and contains adequate warnings.” Tansy, 890 P.2d at 886. The additional Oklahoma requirements that a plaintiff show injury and show that any warning was inadequate when the product “left the manufacturer’s possession and control” are exactly the kind of “narrower” conditions that the Lohr court held were not preempted.
Comparing the relevant elements of federal and Oklahoma law makes it clear that OMahoma imposes no requirements that are “different from, or in addition to” federal requirements. Cf. Riegel, 552 U.S. at 330, 128 S.Ct. 999. The district court incorrectly determined that this claim would be preempted because it would “permit a finding that defendants were required to provide warnings above and beyond those on the Infuse Device’s label and accompanying the device.” Caplinger, 921 F.Supp.2d at 1221. This determination misstates the elements of Oklahoma law. Nothing in Oklahoma failure-to-warn law requires that Medtronic provide additional warnings or labeling in order to escape state tort liability. Once the specific elements of state law are apprehended, it becomes clear that Oklahoma is merely providing a mechanism for recovery if Medtronic violates federal law by introducing Infuse for an adulterated or misbranded use and the warnings accompanying Infuse are inadequate for that adulterated or misbranded use. The state duty, like the federal duty, requires that Medtronic provide adequate directions for use. It does not attach “liability to statements on the label that do not produce liability under [federal law].” See Bates, 544 U.S. at 456, 125 S.Ct. 1788 (Thomas, J., concurring in part and dissenting in part). Permitting recovery would properly hold Medtronic accountable for its alleged violations of state and federal law. To hold otherwise would allow Medtronic to shift liability for its illegal misbranding and adulteration to patients and physicians and provide a strong disincentive for Medtronic to seek supplemental FDA approval when the intended use of a device changes.
Because Caplinger’s failure-to-warn claim is at least arguably parallel to her claim that Medtronic’s misbranded device failed to contain adequate directions for its intended use, I would hold that it is not preempted at this juncture. Cf. Alton v. Medtronic, Inc., 970 F.Supp.2d 1069, 1101 (D.Or.2013) (holding that plaintiffs similar failure-to-warn claim against Medtronic regarding misbranding of Infuse was not preempted).
Caplinger also alleged claims sounding in negligence and negligent misrepresentation. In response to a certified question from our'Circuit, the Oklahoma Supreme Court has explicitly acknowledged “the distinction between - attempting to enforce a federal regulation and allowing a parallel claim for negligence per se bottomed on violation of the regulation.” It held that Oklahoma negligence law provides a *1356 preexisting remedy for many of the harms caused by “adulterated” medical devices. Howard v. Zimmer, Inc., 299 P.3d 463, 470-74 (Okla.2013). The remedy provided is not merely an enforcement action based on the violation of a federal regulation, which would be preempted by Buckman. Id. Caplinger claims that Medtronic provided untrue or misleading information about the safety and efficacy of the particular off-label use of Infuse that Medtronic allegedly promoted. Such conduct is a clear violation of federal law forbidding adulteration and misbranding, including 21 U.S.C. § 352 and 21 C.F.R. § 814.80. To the extent that Caplinger’s negligence and negligent misrepresentation claims parallel these requirements, and her pleadings suggest they well might, those claims should not be preempted.
y
Although I would-hold that several of Caplinger’s claims are not preempted at this early stage of the litigation, and would remand the remaining claims with instructions to permit amendment, I would also echo the Sixth Circuit in reminding Caplinger that over the course of her lawsuit, the “arguments she makes, the proofs she offers, and the evidence she submits are all subject to limitation by preemption principles.” Fulgenzi v. PLIVA, Inc., 711 F.3d 578, 588 (6th Cir.2013). My disagreement with the majority opinion does not turn on the substance of federal preemption law. Instead, our disagreement turns on our respective characterization of Caplinger’s pleadings and understanding of the proper burden at this stage of the litigation, as described by the Supreme Court in cases such as Lohr and Bates. I suspect that the majority would say that I am “trying out arguments and searching out legal theories [Caplinger] has not presented for herself’ (Majority Op. 1342). However, in light of the important federalism concerns at the heart of this case, the district court’s misapprehension of relevant federal law, and its failure to examine the specific elements of state tort law at issue, I would remand for the district court to revisit its analysis with a proper understanding of this regulatory regime.
Ultimately, Caplinger’s allegations need not be conclusive at this stage of the litigation. They need only state a plausible claim for relief. Twombly, 550 U.S. at 556, 127 S.Ct. 1955. Although I disagree with the majority’s interpretation of Caplinger’s complaint, the text of the majority’s opinion properly advises that a future plaintiff alleging similar harms can avoid preemption by carefully explicating the parallels between the alleged federal violations and state tort remedies.

. Ensuring the truthful labeling and promotion of medical devices has been a federal priority for decades. See S.Rep. No. 94-33, at 17 (1976), reprinted in 1976 U.S.C.C.A.N. 1070, 1086 -(stating that "[t]he Committee believes that the Secretary of Health, Education, and Welfare should have authority to regulate prescription medical device advertising”); id. at 2-3, reprinted in 1976 U.S.C.C.A.N. at 1072 (explaining that in the Federal Food, Drug, and Cosmetic Act of 1938, "the major concern with these devices was assuring truthful labeling”).

. In considering Medtronic’s motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we must assume that Caplinger’s factual allegations are true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

. Caplinger also proffers well-substantiated allegations that Medtronic was subjected to a bipartisan Senate investigation for its marketing practices.

. The parties dispute which state law applies. Caplinger argues that determining the relevant state law should not affect the preemption analysis. This is incorrect. The specific requirements and duties imposed by state law are so central to the preemption analysis that this issue on its own merits a remand. See Bates v. Dow Agrosciences LLC, 544 U.S. 431, 453 & n. 27, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005). There is some evidence suggesting that the district court applied Oklahoma law, and in illustrating why I would conclude that some of Caplinger's claims are not preempted at this stage of the litigation, I will discuss the elements of Oklahoma tort law. I express no opinion regarding the proper resolution of this choice of law dispute or whether its resolution would change the result.