NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0420n.06

No. 24-3387

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NAYTHAN A. WARD, JOE PISCIOTTI, CAMERON BOPP, TYNEISHA FERGUSON, JOHN KRALJEVICH, and JAMES C. MULLINS, individually and on behalf of all others similarly situated,

    Plaintiffs-Appellants,

v.

J.M. SMUCKER COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Sep 10, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: GILMAN, STRANCH, and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Naythan A. Ward, Joe Pisciotti, Cameron Bopp, Tyneisha Ferguson, John Kraljevich, and James C. Mullins, on behalf of themselves and others similarly situated, bring this class action under Ohio law against J.M. Smucker Company ("Smucker"). The Plaintiffs allege that Smucker sold them peanut butter that was contaminated with salmonella, thereby denying them the benefit of their bargain. The district court dismissed the Complaint for lack of standing. Based on the analysis set out below, we **AFFIRM** the judgment of the district court.

## I.   BACKGROUND

Smucker is an Ohio-based corporation that manufactures, markets, and sells Jif peanut butter products.[1]  In May 2022, the Food and Drug Administration ("FDA") announced that it was conducting a joint investigation with the Centers for Disease Control and Prevention ("CDC") and other state and local authorities into "a multistate outbreak of *Salmonella* Senftenberg infections linked to certain Jif brand peanut butter products produced at the J.M. Smucker Company Facility in Lexington, Kentucky."  R. 27, Am. Compl., PageID 188 (citation omitted).  The salmonella contamination affected Jif peanut butter products "sold with the lot codes 1274425 – 2140425."  *Id.* at PageID 185.  In response, on May 20, 2022, Smucker voluntarily recalled over forty Jif peanut butter product lines, and the FDA urged consumers to discard the recalled products.  Each Plaintiff bought peanut butter from the recalled product lines and was unable to consume the purchased peanut butter.  As of May 26, 2022, the FDA and CDC had identified "a total of 16 people infected with the outbreak of Salmonella" across "12 states" from "February 17, 2022 through May 1, 2022."  *Id.* at PageID 189 (citation omitted).

On May 26, 2022, Ward filed a class action lawsuit against Smucker in federal court. Ward and the other named Plaintiffs filed an amended, consolidated class action complaint on January 2, 2023, which is the operative Complaint.  Smucker moved to dismiss for lack of standing, mootness, and failure to state a claim.   On April 10, 2024, the district court dismissed the Complaint for lack of standing.  Plaintiffs timely appealed.

---

[1] In reciting the relevant facts, we accept as true all factual allegations in the Plaintiffs' operative Complaint. *See DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

## II.    ANALYSIS

On appeal, Plaintiffs contend that the district court erred in concluding that they failed to assert the requisite injury to establish standing.  Smucker, in turn, argues that the Complaint warranted dismissal not only for lack of standing, but also because the case is moot.  We need not address Smucker's mootness argument, however, because the issue of standing is dispositive.

For a federal court to exercise subject matter jurisdiction over a case, a plaintiff must have standing to sue.  *State ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019).  We review dismissals for lack of standing de novo.  *Ames v. LaRose*, 86 F.4th 729, 731 (6th Cir. 2023).  To establish standing, a plaintiff must allege (1) an injury in fact that is (2) caused by the defendant's conduct and (3) likely redressable by a favorable court decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The plaintiff "bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at 561.  A plaintiff's burden at the pleading stage is to plausibly claim standing. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543-44 (6th Cir. 2021).

The district court dismissed Plaintiffs' Complaint for failure to establish injury-in-fact.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). This case, however, arises at the pleadings stage, at which Plaintiffs' burden is to plausibly claim standing.  "Where there is a facial attack on the pleadings for lack of standing," we must accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiffs.  *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019).  The court may

"consider [the plaintiffs'] complaint and any documents attached to the complaint." *Mackinac Ctr. for Pub. Pol'y v. Cardona*, 102 F.4th 343, 350 (6th Cir. 2024).

Plaintiffs primarily base their theory of injury on Smucker having sold them contaminated peanut butter, arguing that this contamination deprived them of the benefit of their bargain and enhanced their risk of salmonella infection. They raise one other argument: that even if the peanut butter were not contaminated, it was still packaged under unsanitary conditions and was consequently "adulterated," thereby denying them the benefit of their bargain. We address each argument in turn.

### A. Contamination

Plaintiffs first argue that, by selling them contaminated peanut butter products, Smucker placed them at serious risk of salmonella infection and caused them to suffer economic injury. We have held that an increased risk of illness can constitute injury-in-fact. *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 571-75 (6th Cir. 2005). And recently, our court indicated that a plaintiff can suffer a concrete injury when he or she overpays for a defective product. *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 314 (6th Cir. 2025) (en banc). Indeed, we observed that "[m]ost of our sister circuits" have found cognizable injury where a "consumer . . . arguably overpays for a product because it allegedly has a hidden defect," and referenced our decision in *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 581 (6th Cir. 2013). *Id.*

In this case, both theories of injury rely on the same factual premise: that Plaintiffs purchased peanut butter contaminated with salmonella. Accordingly, for Plaintiffs to establish standing under these theories, they must allege facts sufficient to raise a "plausible" inference of contamination. *Mackinac Ctr.*, 102 F.4th at 355 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "mere conclusory statements," standing alone, are insufficient to plausibly

allege injury-in-fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Such statements must be supported by "factual content" sufficient to "nudge" Plaintiffs' alleged injury "across the line from conceivable to plausible." *Id.* at 683 (brackets omitted) (quoting *Twombly*, 550 U.S. at 570); *accord Glennborough Homeowners Ass'n v. USPS*, 21 F.4th 410, 414 (6th Cir. 2021) (noting that a plaintiff "cannot rely on general or conclusory allegations in support of its standing, but instead must assert a plausible claim for why it has standing").

Here, the Complaint asserts that "[e]ach plaintiff purchased Jif peanut products that were contaminated with *Salmonella*." R. 27, PageID 194. We must, then, look further at the underlying facts alleged. *See Ashcroft*, 556 U.S. at 678-79. The Complaint states that, as of May 2022, the FDA identified sixteen cases of salmonella infection linked to peanut butter products produced at Smucker's facility in Lexington, which caused Smucker to recall over forty peanut butter product lines. And it alleges that each named Plaintiff purchased peanut butter from these recalled product lines.

In evaluating whether these allegations suffice to raise a plausible inference of contamination, recent caselaw from one of our sister circuits provides helpful guidance. In *Huertas v. Bayer US LLC*, the plaintiffs expressly asserted that they purchased benzene-contaminated spray products, causing them economic injury. 120 F.4th 1169, 1172-73 (3d Cir. 2024). In assessing whether plaintiffs had standing under that theory, the Third Circuit considered the complaint's underlying factual allegations to determine whether the plaintiffs provided "sufficient details to plausibly allege that their products were contaminated." *Id.* at 1178 (emphasis omitted). The court emphasized the lenient nature of plausibility pleading, noting that "[p]laintiffs need not assert with specificity the extent of the contamination across all products," nor show that "*all* products in the recall were contaminated," which would improperly heighten the pleading

standard from plausible to probable. *Id.* at 1178-79. Nonetheless, even under this standard, the court explained, the "mere fact that a product" purchased by plaintiffs "was recalled" does not "nudge" a claim of alleged contamination from "conceivable to plausible." *Id.* at 1178 (brackets omitted) (quoting *Twombly*, 550 U.S. at 570). Instead, the court found potential injury-in-fact based on testing of recalled product samples, which detected benzene in twelve of thirteen samples, as well as a related judicial complaint in a different court referencing additional testing and "data [the company] relied upon in deciding to proceed with the recall."[2] *Id.* at 1172-73, 1178-80.

Unlike in *Huertas*, Plaintiffs do not offer any allegations suggesting sufficiently widespread or extensive contamination, such as allegations regarding sampling, testing, or other pertinent data or information.[3] Nor does the Complaint allege any facts regarding the specific peanut butter products they purchased, other than the fact that the products Plaintiffs purchased came from recalled product lines. A product recall, by itself, does not suffice to raise a plausible inference of contamination. *Id.* at 1178. Plaintiffs allege that the FDA identified at least sixteen reported cases of salmonella infection and traced those infections to Smucker's Lexington facility, which indicates that some peanut butter products sold by Smucker were contaminated. Under these alleged facts, it is possible that one or more Plaintiffs purchased contaminated peanut butter. But mere possibility is not enough—the allegations must cross the line from possible to plausible. *Twombly*, 550 U.S. at 557; *see also Huertas*, 120 F.4th at 1178-79. The facts alleged here do not raise the reasonable inference that the contamination was sufficiently extensive to plausibly affect any given product.

---

[2] Based on such allegations, the Third Circuit remanded the case to the district court for further consideration of the allegations in the related judicial complaint. *Huertas*, 120 F.4th at 1180-81.

[3] We do not suggest that sampling and testing is the *only* method of showing sufficiently extensive contamination; it is simply one method of pushing an allegation of contamination from possible to plausible, as in *Huertas*. 120 F.4th at 1172-73, 1178-80.

Without additional allegations indicating the nature or extent of the contamination, we cannot conclude that Plaintiffs have alleged facts sufficient to render plausible—and not merely *possible*—their bare assertion that they purchased contaminated products. *See Huertas*, 120 F.4th at 1178-80. Accordingly, the specific theories of economic injury and increased risk of illness, as pled and maintained by Plaintiffs, lack the factual support necessary to overcome a motion to dismiss. Because Plaintiffs have not plausibly alleged that the peanut butter products they purchased were contaminated, they lack standing for their claims of economic injury and risk of illness.

### B. Adulteration

Plaintiffs alternatively argue that, even if their specific peanut butter products were not contaminated, the products were nonetheless "adulterated." Food is "adulterated" when, among other things, "it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 342(a); *accord Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084-85 (11th Cir. 2019) (recognizing that a plaintiff may suffer injury-in-fact by purchasing adulterated products).

By selling them food that was prepared in unsanitary conditions and misrepresenting such food as safe and healthy, Plaintiffs posit, Smucker denied them the benefit of their bargain. Plaintiffs, however, did not raise this adulteration argument in their briefing before the district court. "It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997). That principle extends to our standing doctrine. *See Glennborough*, 21 F.4th at 414 ("[A] party can forfeit its argument for why

it has standing to sue." (emphasis omitted)).  Because Plaintiffs did not raise this argument below, they have forfeited it on appeal.

Although Plaintiffs concede that they did not present this argument to the district court, they nonetheless argue that a "plain miscarriage of justice will occur if this argument is not heard on appeal because of the heinous conduct of [Smucker] and because Plaintiffs are entitled to their day in [c]ourt."  Reply Br. 10.  But Plaintiffs offer no specific reason, and we are aware of none, for why this appeal falls within the narrow category of cases in which considerations of justice are sufficiently "exceptional as to warrant our considering [their] new theory."  *Bailey*, 106 F.3d at 144.

Plaintiffs' adulteration-based theory of standing, therefore, cannot be considered.  Because Plaintiffs do not proffer any legally cognizable theory of standing, they cannot prevail in this appeal.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.